2006 OK CIV APP 55

In the Matter of the ESTATES OF Donovan Myrl WATSON, Deceased; Myrl Louise Watson, Deceased; and Donovan Perren Watson, Deceased.

Jessica Donn Watson,
Petitioner/Appellant,

v.

Sylvia Watson, Appellee/Cross–Appellant,

and

Tina Marie Lovelady, Personal Representative of the Estate of Donovan Myrl Watson, Deceased, Cross–Appellee.

No. 101,310.

Court of Civil Appeals of Oklahoma,
Division No. 4.

April 18, 2006.

Charles P. Horton, Horton & Associates, Mangum, OK, for Appellant.

Ronald L. Brown, Burnett & Gelnar, P.L.L.C., Edmond, OK, for Appellee Sylvia Watson.

Charles P. Horton, Horton & Associates, Mangum, OK, for Cross–Appellee Tina M. Lovelady.

Opinion by JOHN F. REIF, Judge:

¶ 1 This appeal by Jessica Donn Watson and cross-appeal by Sylvia G. Watson arise from proceedings to probate the intestate estates of Donovan Myrl Watson, Donovan Perren Watson (his father), and Myrl Louise Watson (his mother). Jessica is the minor child of Donovan Myrl Watson's second marriage and the granddaughter of Donovan Perren Watson and Myrl Louise Watson. Sylvia sought and obtained recognition as an heir of these decedents over Jessica's objection. The trial court ruled Sylvia was the child of Donovan Myrl Watson's first marriage, having been born within ten months of the dissolution of that marriage as provided by 10 O.S.2001 § 2(A)(1). Despite this determination and Jessica's minority, the trial court declined to appoint Sylvia as personal representative of Donovan Myrl Watson's estate as provided in 58 O.S.2001 § 122. Jessica appeals the trial court's determination that Sylvia was an heir, and Sylvia cross-appeals the trial court's refusal to appoint her personal representative of the estate of Donovan Myrl Watson. Upon review of the record and applicable law, we affirm the trial court's decision on each of these issues.

### I.

¶ 2 On appeal, Jessica asserts that Sylvia was a child born out of wedlock because she was born after the dissolution of the marriage between Donovan Myrl Watson and Sylvia's mother. Jessica basically argues that a child born out of wedlock cannot invoke the presumption in 10 O.S.2001 § 2(A)(1) after the death of the putative father. Jessica maintains a child born out of wedlock must establish his right to inherit as provided in the first paragraph of 84 O.S. 2001 § 215. Jessica points out that Sylvia did not prove acknowledgment by Donovan Myrl Watson during his lifetime, nor demonstrate a judicial determination of his paternity, as provided in the first paragraph of § 215.

¶ 3 The chief problem with Jessica's position is that it ignores the second paragraph of § 215. The second paragraph states: "For all purposes, the issue of all marriages null in law, or dissolved by divorce, are deemed to have been born in wedlock." To determine "the issue" of a marriage, it is necessary to look to 10 O.S.2001 § 2 which provides:

A. Except as otherwise provided by Section 215 of Title 84 of the Oklahoma Statutes, a man is presumed to be the natural father of a child for all intents and purposes if:

1. He and the child's natural mother ... have been married to each other and the child is born ... within ten (10) months after the termination of the marriage by ... divorce.

¶ 4 By prefacing the presumption with the words "Except as otherwise provided by Section 215 of Title 84," we do not find an intent to limit the presumption to the lifetime of the father; rather, this preface simply makes it clear that the presumption and other means for establishing a father-child relationship in § 2 are not exclusive and operate in addition to the means set forth in § 215.

■ ¶ 5 Oklahoma law has long recognized that the means of establishing a father-child relationship are cumulative rather than preclusive.

Where a party asserts the right of inheritance from the father, ... it is incumbent upon such claimant to produce proof that he was born to such father in lawful wedlock, *or present a condition by his proof from which legitimacy will be presumed,* or, if born out of wedlock, that the father legitimatized such claimant in some manner known to the law.

*Frazier v. McCary,* 1925 OK 419, ¶ 0, 110 Okla. 138, 236 P. 880 (syllabus 2) (emphasis added).

¶ 6 Sylvia presented proof of a "condition ... from which [her] legitimacy will be presumed" under 10 O.S.2001 § 2(A)(1). That is, she offered proof that she was born two months after the dissolution of the marriage of Donovan Myrl Watson and her mother. Her birth was well within the ten-month

period provided by § 2(A)(1). Upon such proof, the burden shifted to Jessica to rebut the presumption that Donovan Myrl Watson was Sylvia's father. 10 O.S.2001 §§ 2(B) and 3. In view of the fact that Jessica did not present evidence to rebut the presumption, the trial court properly ruled that Sylvia was the daughter and heir of Donovan Myrl Watson and an heir of Donovan Perren Watson and Myrl Louise Watson.

## II.

■ ¶ 7 In her cross-appeal, Sylvia contends the trial court erred in denying her letters of administration and in granting letters of administration to Jessica's guardian ad litem. Sylvia argues (1) she has a preference as the child of Donovan Myrl Watson to serve as administrator of his estate as provided in 58 O.S.2001 § 122(2), and (2) Jessica's guardian ad litem is not a "guardian" under 58 O.S.2001 § 125 entitled to letters of administration on behalf of Jessica due to Jessica's minority. In this latter regard, there is no dispute that the guardian ad litem has been Jessica's "custodian" since the divorce of her parents, but has never been appointed as general guardian of Jessica's person or estate.

■ ¶ 8 Unquestionably, Sylvia's status as a child of Donovan Myrl Watson entitles her to be appointed as administrator of his intestate estate as provided in 58 O.S.2001 § 122(2). It is also clear that Jessica is incompetent to serve as administrator due to her minority as provided in 58 O.S.2001 § 126. What is not so clear is whether the trial court could grant letters of administration to Jessica's guardian ad litem as provided by 58 O.S.2001 § 125.

¶ 9 Section 125 directs that "letters must be granted to [a minor's] guardian, or any other person entitled to letters of administration, in the discretion of the court." In the case of *In re Enochs' Estates,* 1958 OK 40, ¶ 0, 322 P.2d 197 (syllabus 1), the Oklahoma Supreme Court said that "[s]ection 125 ... providing that letters of administration shall issue to the guardian of a minor, instead of to the minor himself, refers to *a guardian ap-*

*pointed in this state,* and not to one appointed in some other state." (Emphasis added.)

¶ 10 A guardian can be appointed under Oklahoma law to generally protect the person and estate of a minor, *see* 30 O.S.2001 and Revised Supp.2005 §§ 2–101 through 2–116, or when it is necessary for a minor to be a party to litigation affecting the rights of the minor, 12 O.S.2001 § 2017(C). This latter statute recognizes that an infant may sue or defend by a "general guardian" or by a "guardian ad litem." In cases where a court appoints a "guardian ad litem," the court is empowered "to make such other order as it deems proper for the protection of the infant."

¶ 11 In providing for the issuance of letters of administration to the guardian of a minor, the legislature did not expressly limit the issuance of letters to a general guardian of a minor. As § 2017(C) indicates, the legislature is aware of the difference between a general guardian and guardian ad litem. Given the fact that both types of guardians can represent the interests of their minor wards in litigation generally, there appears to be no reason to conclude that the legislature intended to exclude guardians ad litem from receiving letters of administration on behalf of the minors they represent in probate cases. The legislature did not modify the term guardian in § 125 and this court should not do so by an interpretation that would limit the statute to "general" guardians alone.

¶ 12 Under § 125, the court in its discretion could issue letters of administration to Jessica's guardian ad litem or to "any other person entitled to letters of administration," like Sylvia. Also, "[w]hen there are several persons equally entitled to the administration, the court *may* grant letters to one or more of them." 58 O.S.2001 § 124 (emphasis added).

¶ 13 Contrary to Sylvia's assertion, the trial court was not required to issue letters of administration to her. The trial court was vested with discretion in deciding whether to appoint Sylvia alone, the guardian ad litem alone, or both to serve as co-administrators.

¶ 14 Jessica contends the trial court had sufficient cause to appoint her guardian ad litem to serve as the sole administrator. Jessica points out that the trial court expressed concern that the animosity between Jessica and Sylvia would be detrimental to the administration of the estate by Sylvia alone or even as co-personal representative. Jessica argued that this amounted to a finding Sylvia was "incompetent to serve as administrator by reason of her demonstrated animosity toward Jessica ... which might cause her to be improvident or treat [Jessica] unfairly under Title 58 O.S.[2001] § 126." Jessica also cites *Wyche v. Wyche,* 1961 OK 211, 365 P.2d 993, in support of this contention.

¶ 15 The chief problem with Jessica's position is that the *Wyche* case construed disqualifying improvidence in § 126 to mean the "want of care and foresight in the management of property which would be likely to render the estate and effects of the intestate unsafe and liable to be lost or diminished in value." *Wyche,* 1961 OK 211, ¶ 16, 365 P.2d at 996 (citations omitted). Improvidence relates to a party's inability to manage property and assets, not to any feelings toward other heirs. There was no evidence that Sylvia was incompetent by reason of business improvidence to serve as administrator.

¶ 16 Even though Sylvia was not incompetent to serve as administrator as provided by § 126, this does not mean she is automatically entitled to serve as administrator simply because Jessica's right to serve is exercised by her guardian ad litem. *See Sparks v. Steele,* 1972 OK 127, ¶ 16, 501 P.2d 1106, 1110. This is a circumstance where "there are several persons equally entitled to the administration" as recognized in § 124. In such cases, the trial court is given discretion to grant letters "to one or more of them."

¶ 17 In denying Sylvia's request for letters of administration and granting letters to Jessica's guardian ad litem, the trial court expressly found "it would be cumbersome and inefficient to have co-personal representatives given the animosity apparent in this matter." In reviewing a trial court's decision concerning conflicting claims for letters of administration, an appellate court will weigh the evidence, but will not reverse the judg-

ment of the trial court unless it clearly appears to be against the weight of the evidence. *Wyche,* 1961 OK 211, ¶ 0, 365 P.2d at 994 (syllabus).

¶ 18 In weighing the evidence, an appellate court must bear in mind "[t]he trial court was in a position to observe the witnesses as they testified." *Id.* at ¶ 19, 365 P.2d at 996. Additionally, the party challenging the decision of the trial court carries the burden to show the findings and judgment of the trial court are against the clear weight of the evidence. *Id.* at ¶ 18, 365 P.2d at 996.

¶ 19 In reviewing the record, we do not find the trial court's decision to appoint Jessica's guardian ad litem as the sole administrator of Donovan Myrl Watson's estate to be against the clear weight of the evidence. The trial court was in the best position to assess the impact that animosity between the parties would have on the administration of the estate and to decide which applicant for administration would be least affected by such animosity.

III.

¶ 20 In the appeal by Jessica Donn Watson of the judgment determining Sylvia G. Watson to be the child of Donovan Myrl Watson and the heir of Donovan Perren Watson and Myrl Louise Watson, the judgment is affirmed. In the cross-appeal by Sylvia G. Watson of the judgment appointing the guardian ad litem of Jessica Donn Watson to be the sole administrator of Donovan Myrl Watson's estate, the judgment is affirmed.

¶ 21 AFFIRMED.

RAPP, V.C.J., and GABBARD, P.J., concur.